IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KRIS SARAYN KOLLYNS (FORMERLY #145461, A/K/A KRISTOPHER S. KOLLINS, A/K/A JOHN WAYNE TODD, A/K/A JOHNNIE W. TODD),<br><br>                  Plaintiff,<br>  vs.<br><br>DR. JOSE CHAVEZ, IN HIS INDIVIDUAL CAPACITY; DR. SELMAN WATSON, IN HIS INDIVIDUAL CAPACITY; AND SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH, FOR INJUNCTIVE RELIEF ONLY,<br><br>                  Defendants. | Civil Action No. 3:05-3328-JFA-JRM<br><br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff filed this action under 42 U.S.C. § 1983 on December 12, 2005.[1] He has been involuntarily committed to the South Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant to the South Carolina Sexually Violent Predator Act ("SVP Act"), S.C. Code Ann. § 44-48-10 et seq. Plaintiff is in the Behavioral Disorders Treatment Program ("BDTP"). Defendants are Dr. Jose Chavez ("Chavez"), a physician who provides medical care to BDTP residents; Dr. Selman Watson ("Watson"), the Acting Director of the BDTP at the time of the alleged incidents; and the SCDMH. On March 31, 2006, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on April 4, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because these are dispositive motions, this Report and Recommendation is entered for review by the court

Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on April 17, 2006; Defendants filed a reply with supplemental affidavits on April 24 and 26, 2006; and Plaintiff filed a supplemental response and motion to strike on May 16, 2006. Plaintiff filed an untimely[2] motion for summary judgment on June 13, 2006, and Defendants filed a response on June 30, 2006.

## DISCUSSION

Plaintiff alleges that when he goes to medical appointments outside the BDTP, he is required to be transported in leg irons. He claims that wearing leg irons causes him physical harm. Plaintiff also alleges that Dr. Chavez put false information in his medical history which prevents him from being transported without the leg irons and which could affect his chances from being released from the BDTP program. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff fails to state a Fourteenth Amendment claim; (2) Defendants are entitled to qualified immunity; (3) Defendants are entitled to Eleventh Amendment immunity; and (4) Plaintiff is not entitled to any injunctive relief. Plaintiff contends that his motion for summary judgment should be granted because he has presented evidence that his BDTP records contain false information about an escape.

1. Medical Claims

Plaintiff alleges that Defendants' requirement that he be transported to outside medical appointments in leg irons has caused him pain. He claims that he has been diagnosed with a damaged spinal cord with vertebra crushed in two locations and Defendants' own medical

---

[2]The scheduling order in this action provided that motions were due by March 31, 2006. January 30, 2006 Scheduling Order.

specialist wrote an order that Plaintiff should not wear leg irons to protect him from falling down due to nerve damage and from further injury to his spinal cord. Complaint at 2. Plaintiff alleges he was transported with leg irons on November 14, 2005, and when he returned to the BDTP unit his right leg was dragging due to nerves being pinched from his spinal cord. Defendants contend that Plaintiff has not shown that his constitutional rights were violated and his medical records do not support his claims.

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. Youngberg v. Romeo, 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement under the SVP Act bear some reasonable relation to the purpose for which persons are committed. See Seling v. Young, 531 U.S. 250, 265 (2001); Youngberg v. Romeo, supra. The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. DeShaney v. Winnebago, 489 U.S. 189, 200 (1989); Youngberg, 457 U.S. at 324.

In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. Youngberg, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. Id. at 322.

To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints. Patten v. Nichols, 274 F.3d 829 (4th Cir. 2001). While courts have not adopted a consistent standard, there is agreement that the professional judgment standard requires more culpability than mere negligence. Compare Yvonne L. v. New Mexico Dep't of Human Servs., 959 F.2d 883, 894 (10th Cir. 1992)(doubting whether "there is much difference" between the deliberate indifference standard and the Youngberg standard), with Doe v. New York City Dep't of Soc. Servs., 709 F.2d. 782, 790 (2d Cir. 1983)(stating that in Youngberg, "the Court adopted what is essentially a gross negligence standard"); see also Shaw v. Strackhouse, 920 F.2d 1135, 1146 (3d Cir. 1990)("Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.").

Plaintiff has not shown that Defendants violated the professional judgment standard. Review of Plaintiff's medical records and progress notes (attachment to Chavez Aff.) reveals that medical staff at BDTP have addressed Plaintiff's complaints of back pain on a number of occasions (including August 12, 16, and 26 and October 6, 2005); Plaintiff has refused opportunities to have his medical concerns assessed (October 27 and November 14, 2005); Dr. Chavez referred Plaintiff to the orthopaedic clinic; x-rays of Plaintiff's lumbar spine were taken on January 17, 2006; the findings of the x-rays revealed only "mild spondylosis but no acute or aggressive abnormality"; Plaintiff was seen by Dr. John L. Eady, an orthopaedist, on January 20, 2006, who made similar findings and no recommendations concerning relief from the use of restraints on Plaintiff during transports. Further, there is no indication in the record that Plaintiff sought or suffered any medical

problems from wearing leg restraints during transport and his medical records indicate that a wheelchair van was requested on January 5, 2006 to address Plaintiff's complaints.

    2.    <u>Information Contained in Medical History</u>

Plaintiff alleges that Dr. Chavez wrote an order in his treatment file that he would be required to wear leg irons on transport due to escapes while Plaintiff was incarcerated (prior to his commitment at BDTP) at the South Carolina Department of Corrections ("SCDC"). He claims that this information is false because he never escaped or attempted to escape from SCDC. Plaintiff alleges that based on this false information he is forced to wear leg irons when he goes to medical appointments outside the institution, causing him pain. He also claims that this information harms his chance for release from the BDTP because it could be reviewed by courts when making the decision to release him. Plaintiff alleges that the inclusion of this information in his medical file means that he has been convicted by the Defendants of crimes without due process. Defendants contend that Plaintiff fails to show that the professional judgment standard has been violated. They concede there is no indication that Plaintiff was ever charged with an escape attempt while at SCDC, but state that it is documented in an evaluation report of Plaintiff by Dr. Pamela Crawford ("Crawford") that Plaintiff acknowledged he developed an escape plan while incarcerated. Defendants further contend that even without evidence of a heightened escape risk, there is a substantial state interest in using restraints on Plaintiff to protect court officials, medical personnel, and the public from an individual found to be a sexually violent predator.

Plaintiff fails to show that Defendants violated the professional judgment standard. See Youngberg v. Romeo, supra. Although his medical record contains a past reference to an escape,[3] it is noted later in his record [4] that BDTP officials were informed Plaintiff did not have a history of escape at SCDC. Defendants Watson and Chavez specifically state they are not aware of any information that would indicate Plaintiff has been charged with or convicted of escape or attempted escape while he was incarcerated within SCDC. Watson and Chavez also state they are aware of information indicating that Plaintiff reported he had a plan for escape from SCDC. Watson Supp. Aff., Paras. 1 and 2; Chavez Supp. Aff., Paras. 1 and 2. Defendants have submitted an affidavit from Dr. Pamela Crawford ("Crawford"), a psychiatrist, who states that she interviewed Plaintiff for two days (September 26 and October 6, 2003) to determine whether Plaintiff met the criteria for commitment pursuant to the SVP Act. She states that during her interview of Plaintiff, he reported that while he was an inmate of SCDC he devised a plan for escape from SCDC which involved asking his (then) wife to bring a gun to a medical appointment so he could use the gun to escape. Crawford Aff. Defendant Watson also included part of Crawford's report as an attachment to his affidavit.

---

[3]In "Physician's Orders" dated October 6, 2005, Dr. Chavez noted: "Will continue with leg irons (per security recommendation) when [Plaintiff] goes out of the building to any clinic because of previous history of escape attempt in corrections." Chavez Aff., Attachment at p. 9; Plaintiff's Opp. Mem., Ex. F.

[4]On November 18, 2005, it is noted that Ms. Rolock of SCDC conveyed that Plaintiff had no history of escape or attempted escape. Chavez Aff, Attachment at p. 3; see also Plaintiff's Opp. Mem., Ex. A ("Case manager showed Dr. Watson paperwork from SCDC Escape/Attempt showing no escape").

Plaintiff fails to show that the inclusion of any statements about escape caused him any harm. Franklin Abney ("Abney"), a law enforcement who works within the Office of Public Safety for the SCDMH and oversees security fo the BDTP, states that the use of restraints is mandatory when residents of the BDTP are transported to appointments (medical and legal) outside of the BDTP because of safety and security issues. He states an exception may be made where a physician determines that the use of restraints would create a substantial risk of serious injury or harm to a particular BDTP resident and there is a determination that the particular BDTP resident would not present a risk of escape or other breach of security in the absence of restraints. Abney states that even if a particular BDTP resident would not present a heightened risk of escape or other breach of security in the absence of restraints, the resident would not be excused from the restraint requirements during transports unless there is a valid, documented medical basis for such a decision. He states he has not been provided any documentation from a physician that would indicate that Plaintiff was excused from the restraint requirement during transports. Dr. Chavez states that he determined that the use of restraints on Plaintiff during transports would not present a substantial risk of serious injury or harm to Plaintiff. He also states that Plaintiff has refused medication which has been prescribed for the pain of the type he complains of in his lawsuit. Chavez Aff., Para. 11. H

Finally, contrary to Plaintiff's assertions, there is nothing in the record to indicate that he has been "convicted" of a crime without due process or that he will be held more time because of the notation. It is apparent that Plaintiff has his SCDC record in his possession which indicates no such escape history. As noted above, the medical records now indicate that BDTP officials have been provided with this information. Plaintiff has presented no evidence that any adverse decision

concerning his confinement was made based on any erroneous information prior to the update to the medical record.

    3.    <u>Retaliation</u>

Plaintiff alleges that Defendants included information in the record about alleged escapes or escape attempts in retaliation for Plaintiff filing a lawsuit against them. Defendants Watson and Chavez deny that they have taken any action against Plaintiff for filing a grievance, claim, complaint, or lawsuit. Watson Supp. Aff., Para. 4; Chavez Supp. Aff., Para. 4. Bare assertions of retaliation do not establish a claim of constitutional dimensions. <u>See</u> <u>Adams v. Rice</u>, 40 F.3d 72 (4th Cir. 1994), <u>cert.</u> <u>denied</u>, 514 U.S. 1022 (1995). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. <u>Id.</u> at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" <u>Cochran v. Morris</u>, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, <u>Adams</u>, 40 F.3d at 74. Here, Plaintiff fails to show that his constitutional rights were violated. He merely writes that "the charge that the Defendants created the false criminal history in [his] record so that the state court would be mislead, as punishment for naming them in a civil action, is the weakest point of [his] complaint, [he] believes that the time-line of events speak[s] for [itself]." Plaintiff's Supp. Opp. Mem. at 4. Further, restraints were used during transport for security reasons, as discussed above.

    4.    <u>Equal Protection</u>

Plaintiff may be attempting to assert an equal protection claim, alleging that approximately one-third of BDTP residents are not required to wear leg restraints during transports. An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class, he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. See Turner v. Safley, 482 U.S. 78, 89 (1987). Plaintiff has not alleged that he is a member of a suspect class and he has not shown that he was treated differently from similarly-situated residents of the BDTP or that such unequal treatment was the result of intentional discrimination.

5.     Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police,

491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants Chavez and Watson argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

10

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants Chavez and Watson violated any of his clearly established constitutional or statutory rights. Therefore, Defendants Chavez and Watson are entitled to qualified immunity in their individual capacities.

## MOTION TO STRIKE

On May 16, 2006, Plaintiff filed a motion, pursuant to Federal Rule 12(f), to strike the supplemental affidavits of Defendants Chavez and Watson. Defendants contend that the motion should be denied because motions to strike pursuant to Rule 12(f) are directed only to pleadings and the affidavits are not based upon hearsay.

It is recommended that Plaintiff's motion to strike be denied. A motion to strike pursuant to Rule 12(f) is not available to strike material set forth in affidavits. See United States v. Southern Cal. Edison Co., 300 F.Supp.2d 964 (E.D.Cal 2004); York v. Ferris State Univ., 36 F.Supp.2d 976 (W.D.Mich. 1998); International Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminals, Inc., 904 F.Supp. 500 (E.D.Va. 1995).

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 16) be granted; Plaintiff's motion to strike (Doc. 25) be denied; and Plaintiff's motion for summary judgment (Doc. 27) be denied.

> Respectfully submitted,
>
> s/Joseph R. McCrorey
> United States Magistrate Judge

December 14, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

13